The first case for argument is United States v. March. Counsel? Good morning, Judge. Counsel, may it please the Court, I'm Terry Ratliff, appointed counsel to represent Mr. Lyle March. I think my brief has basically essentially covered everything we have, along with Mr. Breitermeter's brief. There are two things I'd like to bring up this morning. First, although I understand that Blakely v. Washington is being reviewed by the U.S. Supreme Court, under this Court's decision in the Ameline case, I'm asking this Court to take a look at the sentencing issues in this case. Even though they weren't raised in the brief, I think the Court can do that through Ameline and actually would move the Court to allow me to supplement the record with a sentencing transcript in this matter. I think the letter to the Court by Mr. Breitermeter is accurate, and it involves the issues in the following way. There was no jury determination as to what and whether or not any of the animals in this case were trophy animals. There was no jury determination as to the value of the bighorn sheep in this case. That was hotly contested in front of the judge. There was no value of any animal established by the jury that was taken in this case. And there was no jury determination that Mr. Marsh took the game as for a pecuniary reason. So I think under those auspices, Blakely and Ameline are applicable to this issue and to this case. And they have subsequently came out after the time for filing the briefs in those matters. So I'd ask the Court leave to be able to supplement the briefing record and the excerpt of record on appeal as to those issues. As to the issue raised by Mr. Breitermeter in his brief, the issue then is whether or not the jury convicted my client under 16A of the Tribal Code or 16C of the Tribal Code. Mr. Breitermeter. First issue, what difference does it make on his sentence? Can you tell us that? Well, on the sentencing issue, as far as the value of the bighorn sheep, the Court determined the value and then based on that value raised the sentencing enhancement by six levels. Okay. How does that translate out? As far as times? Time, yeah. Well, unfortunately, I forgot to bring the guidelines with me, so I don't have the answer to that. And I was not able to get ahold of the guidelines to figure out, but it was a six-level increase. That much is clear. So I apologize. I'm not able to answer that question. How long was the sentence? It was a total of, I believe, 157 months. Let me look at my record here. All right. So it's not about to expire. No. The last we heard, Mr. March is about to be signed and transferred to a halfway house. Oh, he is. Yes. So it does have some time. Mine says 37 months. Is that what you said? No, I didn't. I'm sorry. Let me get to my judgment here. It's 157. I couldn't imagine how he would be getting to a halfway house. I think that's incorrect. 37 months, I'm sorry. It is 37 months. So my apologies for that. Right. Well, one of the issues on the sentence thing is, does it make a difference? And so maybe the government can help us out with that on likely issues in terms of whether it fits within the range. One would expect with a six-level increase that it would make a difference, but you don't know. I'm not sure. Maybe the government's got that figured, but I'm sorry. I just don't have that. Other than that, those issues that I've brought, I think my brief speaks for itself. I have a question. Yes, ma'am. It didn't speak for itself. Okay. A couple of issues for me. How do you reconcile your position that the district court cannot instruct the jury to find a violation of tribal law, with our holding in so happy on the applicability of the Lacey Act to Indians? It appears that there is concurrent jurisdiction between the tribes and the federal courts. So as I understood your brief, you said the district court cannot instruct the jury to find a violation of tribal law? I don't think that the district court can make that finding, cannot instruct the jury on that, without a prior finding by the tribal court. What support do you have for that? Other than the tribal sovereign immunity issue, I don't have any case law for that. But that's our argument. Our argument is it's a tribal ---- It wasn't a question as to whether or not he was a resident or was an Indian. That's correct. I mean, that wasn't even an issue in this case. That's correct. We didn't argue the fact that he was not an Indian. The issue was whether or not he was a resident. And then secondly, and most importantly, was the fact that the tribal authorities issued him a valid tag and license. So the determination by the tribal authorities was he's a valid hunter. The question was whether that was procured by fraud. Right. But the tribal authorities had indicated that it was not. If you recall the testimony, the agents of the tribe that worked in the office issuing the tags and the licenses never once said, we're not going to give you these tags or licenses. You're going to have to go get clearance from the business council or the leaders. They issued him a valid license and tag. So our position was throughout the trial that because of that sovereign decision of the tribe in issuing those ---- Well, the tribe has sovereign authority to determine who is an Indian, but the Lacey Act gives concurrent jurisdiction on these other issues. Well, we disagree. That's why we're here. You're talking about sovereign immunity, but this has nothing to do with sovereign immunity, does it? It has to do with the sovereign reach of the tribe. And so certainly if they have concurrent jurisdiction, how does this impinge on tribal sovereignty at all? Well, because of the fact that it's a tribal hunting rules and regulations, it's talking about either on reservation or historic tribal lands, the tribe made the decision that Lyle was eligible to hunt on those lands or use those tags. So I understand the issue is concurrent jurisdiction. But what you've got is you've got one sovereignty saying you're legal, you can go hunt, you can go trap or do whatever you can do, and the United States saying, no, you can't. Well, that's no different from state sovereignty versus federal sovereignty. Well, it's a matter of preemption. And in this issue, I don't think the government's got preemption over the sovereign, the ability of a tribe to determine who can hunt and who can't. So that's the position we took throughout the trial. So unless there's other questions, I didn't have anything further. Thank you, counsel. Thank you. Good morning. May it please the Court. My name is George Breitsman. I'm an assistant in Boise, Idaho. And the Court, having read the briefs, understands that this case is about, first of all, Mr. March was convicted on seven misdemeanor counts of violating the Lacey Act, involving the taking of three trophy animals, a California bighorn sheep, a trophy moose, and a trophy elk animal. Those wildlife were taken in violation of both the Choban Tribal Code, his own tribal code, as well as the State of Oregon and State of Idaho state laws. To answer the Court's questions, first on the Blakely issue, the guideline issue, the sentence, as Mr. Ratliff indicated, was 37 months. There was an eight-level upward adjustment for the value of the wildlife as well as pecuniary gain. I would concede that there's no question that without those eight levels, Mr. March would probably be out of prison today. As Mr. Ratliff indicated, he is scheduled to be released to a halfway house shortly. With regard to the question, what do you suggest we do in that instance? I mean, here we have someone who is likely, if relief is warranted, then he should be released. If it's not, then he shouldn't. My understanding is that the Court has taken a position to wait until the Supreme Court rules on that issue. Unless the sentence is so short that waiting would essentially moot the relief requested. Your Honor, the Court has a better view of what it's doing on these type of cases than I do. I'm sorry, I really don't have any. If the Court, in March, 05 is his release date. And obviously he has a right, if the Blakely decision is affirmed by the Supreme Court, then the matter needs to be remanded back to the trial court for sentencing issues, for a determination under the Blakely case. Well, some of the district courts aren't happy about it. In some of these similar cases, we've simply remanded and said, take whatever action you think is appropriate, given the fact that the length of the sentence would be such that it might make appellate relief moot. Would you object to that? Your Honor, I would ask. My hope, of course, like everyone's, I guess, is if the decision is reached in the next week or two, that this issue then becomes moot. And that if the Supreme Court doesn't rule within the next 30 days, Your Honor, I would not object to that. I don't think you can add on that quickly. It's a complicated issue. I assume they've been considering it during the summer recess. Writing a decision is not that easy. And I would hope they haven't written the decision yet, since the arguments this morning. Right. And there are going to be two decisions. And they may go back and forth, and someone may even change his vote. So all right. Well, I think Judge Thomas accurately stated what the general view is, that if it would make a difference and by inaction we would be ruling for one party, in effect, that we have generally remanded to the district court and let the district court do what it thought was right. And then it seems to me if we do that, you can make your argument to the district court, that one of its options is to wait for the Supreme Court and the district judge whether to agree or not. In this case, magistrate judge.  Yes. Particularly in light of our decision, Amelie. Right. I don't know if I could follow up a minute just briefly on a question. I think it's probably not necessary to supplement the record, since there's agreement by the parties as to the effect of the sentence, that it is determinative. I think we have that general agreement on the record. And I think we probably don't need to wait for the record itself. Wouldn't you agree with that, counsel? As I indicated earlier, Your Honor, my hope would be that the Supreme Court rules in the next 30 days. No, no, I'm not saying what we would do. I said I don't think we need the record. You are in agreement, the two of you, about what the facts are. Yes, we are, Your Honor. Thank you. So we don't need the sentencing transcript. No, you do not. Thank you. Thank you. I'm sorry. Just to follow up on a question the Court just asked a moment ago of counsel, clearly with regard to the permits that were issued by the Shoshone-Bannock tribe to Mr. March, the jury found, based upon the evidence, that there was an intentional false statement that was made by Mr. March when those permits or tags were issued. And, of course, that had to do with the fact that he claimed to be a resident of the reservation. And based upon substantial evidence that he was not a resident that was introduced at trial, the jury found that he did, in fact, deliberately provide false information as to that residency  And so when counsel argues a moment ago with regard to the tags, the point is that those were obtained by fraud from the tribe. And I think the Court recognized that in its question. But I just wanted to emphasize that point. Do you have an agreement with the Shoshone-Bannock tribe on how these types of crimes are prosecuted? Do you have a formal agreement? We do not have a formal agreement. This case was, as the Court is aware from the record, investigated initially by the tribal authorities. Brett Haskett from the Fort Hall Reservation assisted the state authorities, Idaho Fish and Game, as well as the federal U.S. Fish and Wildlife. There was initially a joint cooperative investigation. I don't know if the Court read the entire transcript, but there frankly was some disagreement later on by the tribe as to how the matter was handled, and to be candid. My question was only whether or not you had a separate formal arrangement, agreement. That would be preferable, certainly, Your Honor. Thank you, counsel. Thank you, Your Honor. All right. Just briefly, Judge Reinhart, Judge Nelson, Judge Thomas, we would request that the Court go ahead and issue a remand as far as sentencing back to the Magistrate Court pending. If the Magistrate Court does, in fact, wish to do something based on Blakely's rehearing, then fine. But I think in light of where this may or may not go, at least if Blakely's upheld, we'll have our hearing. If not, and it's reversed, I think the matter will be subject to either further appeal or be done. But in the meantime, we get the wheels turning as to Mr. Marsh perhaps getting back to Boise to review it in time. Thank you, counsel. Thank you. The case is arguably submitted. The next case on the calendar for argument is Lee v. Hartford.
judges: D Nelson, Reinhardt, Thomas